LAW OFFICES OF RACHEL BLUMENFELD
26 Court Street, Suite 600
Brooklyn, NY 11242
(718) 338-4114
RACHEL BLUMENFELD  (RB-1458)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT NEW YORK
-------------------------------------------------------------X
In re:                                                    :          **Chapter 11 Case No:**
                                                          :          **1-08-44210 (ESS)**
CHANA TAUB                                                 :
                                  Debtor                  :
                                                          :
-------------------------------------------------------------X

**APPLICATION OF THE LAW OFFICE OF RACHEL S. BLUMENFELD
FOR ALLOWANCE OF COMPENSATION PURSUANT TO SECTIONS 327, 328,
329 AND 331 OF THE BANKRUPTCY CODE and RULE 2016 OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

TO:    THE HONORABLE ELIZABETH S. STONG
       UNITED STATES BANKRUPTCY JUDGE

       The Application of THE LAW OFFICE OF RACHEL BLUMENFELD, (the

"Applicant"), the prior bankruptcy attorney for the Debtor and Debtor-in-Possession,

Chana Taub (the "Debtor") the Applicant herein respectfully represents as follows:

       1. This is an Application made pursuant to Sections 327, 328, 329 and 331 of

Title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal

Rules of Bankruptcy Procedure for the allowance of compensation for legal services

rendered by the Applicant to the Debtor during the period between July 3, 2008 through

July 22, 2008.

       2.  As set forth in Exhibit "A" annexed hereto, the amount of professional fees

sought is $8,500.00.   The retainer of $25,000.00 was paid to the Applicant by the

Debtor's sister, Ms. Esther Newhouse, on or about July 9, 2008.  THE LAW OFFICE OF

1

RACHEL BLUMENFELD was notified on July 17, 2008, that there were insufficient funds for $19,000.00 of this retainer.  Ms. Newhouse sent replacement checks to the Applicant in the total sum of $7,500.00.   Thus, the total retainer received by Applicant, pending notice by Applicants bank of sufficient funds, is a retainer in the sum of $13,500.00.

3.  The purpose of scheduling this hearing on shortened notice is that the Debtor has requested that any retainer, which has cleared Applicant's bank account, and that is above what Applicant has earned and is seeking compensation for herein, be turned over as a retainer to Debtor's current counsel, THE LAW OFFICE OF JOEL SHAFFERMAN, LLC.

4.  Exhibit "A" includes summaries of the services provided, together with totals of those categories.  The charges set forth on this Application are billed at the hourly rate of $250.00 for each hour of services rendered.  The Applicant includes the following items in the calculation of its overhead and operating expenses, which are included in the firm's hourly rates: (a)  postage for correspondence, other than those which require significant or exceptional mailings; and (b) photocopies for correspondence and documents, other than those which require significant or exceptional photocopying. Rachel S. Blumenfeld, Esq., of THE LAW OFFICE OF RACHEL BLUMENFELD has represented the Debtor exclusively for the period for which compensation is requested.

5.  All of the professional services for which compensation is requested were rendered in connection with this Chapter 11 case.  No services for which compensation is requested were rendered on behalf of any person or persons other than the Debtor.

2

6. A recitation of the facts of this case are set forth to advise the Court of what transpired in this case thus far, and the services performed by THE LAW OFFICE OF RACHEL BLUMENFELD during her retention. The Court should be advised that while the following information is an overview of what has transpired in the case, the information is intended to be brief and explanatory while not burdening this Court with the day to day details of the case.

7. A Proposed Order Scheduling Hearing on Shortened Notice of this fee application was served on all known creditors and parties in interest.

## BACKGROUND OF THE CASE

8. The Debtor and her husband, from whom she is seeking a divorce, have litigated during the last three years on various issues, in the New York Supreme Court, Kings County. To date, the parties state court litigation, which has been described in numerous articles across the country as Brooklyn's real-life version of "The War of the Roses," has been primarily unresolved.

9. Prior to July 9, 2008, the Debtor met with the Applicant to discuss the Debtor's financial situation. At the time of the filing of the petition, the Debtor was the owner of four pieces of real estate, one of which is held jointly with her husband, and she has an equitable claim in at least another three. Many of the Debtor's tenants were not paying their rent to the Debtor, but allegedly paying their rent to the Debtor's husband. The Debtor, in turn, was unable to pay her obligations on her mortgages for these properties. Accordingly, the tenants failure to pay their rent directly to the Debtor resulted in the filing of this petition.

3

10. On July 1, 2008, the day of a scheduled foreclosure sale, the Debtor filed a *pro-se*, bare-bones, bankruptcy petition pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") to effectuate a stay of foreclosure proceedings.

## MEETING WITH THE DEBTOR - PREPARATION AND FILING OF AMENDED PETITION AND SCHEDULES

11. On or about July 3, 2008, Applicant met with the Debtor to discuss her bankruptcy case, the prior proceedings over the last three (3) years in various Courts including the Supreme Court of Kings County, the venue of her matrimonial proceedings. During Applicant's numerous meetings with Debtor, Applicant advised the Debtor of her rights and responsibilities as a Debtor and Debtor-in Possession.

12. Applicant was instrumental in assisting the Debtor in the ultimate preparation of her petition and schedules. As a result of Applicant's efforts, the Debtor was successful in timely filing said Schedules and as a result, the Debtor was allowed to proceed with other pertinent matters in this proceeding.

13. Applicant, in connection with the preparation of the Schedules, worked closely with the Debtor in reviewing her records, various law suits and other information.

14. Applicant reviewed the papers from the numerous state court proceedings being brought against her, and had meetings and discussions with the Debtor with regard to these actions. Those discussions focused on the proceedings held against the Debtor in various Courts, as well as the rents she is to receive from her properties, and the best, and most efficient way to return those rents to her. During the course of Applicants retention, the Debtor contacted Applicant many times for meetings and telephone discussions with

regard to the issues in her case.

## INITIAL DEBTOR'S INTERVIEW AND § 341 MEETING OF CREDITORS

15.  Applicant met with the Debtor on numerous occasions, as requested by the

Debtor.  Having prepared and filed all the necessary Schedules, Applicant prepared the

Debtor for her Initial Debtor Interview with The Office of the United States Trustee, as

well as her § 341 meeting of creditors as a Debtor-in-Possession.

16.  Applicant was in attendance with the Debtor at the Initial Debtor Interview,

and diligently worked with the Debtor to comply with the numerous document requests

of the Office of the United States Trustee.

17.  Applicant made sure the Debtor's DIP account was opened and that insurance

coverage was in place.  Applicant explained to the Debtor the function and

responsibilities of the Office of the United States Trustee.  Applicant discussed likely

questions of the Office of the United States Trustee as well as counsel to creditors and

creditors.

18.  On or about July 14, 2008, Applicant prepared its application for retention as

attorney for the Debtor *nunc pro tunc,* filed the Application on the Court's Electronic

Case Filing System and was prepared to submit same to the Office of the United States

Trustee.  The Office of the United States Trustee requested a Supplemental Affidavit

from Esther Newhouse, sister of the Debtor, and the source of the retainer to the

Applicant, stating that the retention paid to the Applicant post-petition was a gift, and was

not required to be reimbursed by the Debtor.  The Supplemental Affidavit was prepared

by the Applicant, and signed by Ms. Newhouse on July 21, 2008.  However, submission

of the Application was thereafter moot, as the Applicant was informed on July 22, 2008, of the substitution of counsel to THE LAW OFFICE OF JOEL SHAFFERMAN, LLC.

## MISCELLANEOUS

19. Applicant has engaged in numerous communications with the Debtor regarding the issues raised during this bankruptcy proceeding. In addition, Applicant has telephonically and in person advised the Debtor of her duties as a Chapter 11 Debtor.

20. Annexed hereto as Exhibit "A" is a list of the hours in this matter and a description of what those services were for. At the time of retention, Applicant and the Debtor agreed that Applicant's billing rate would be $250.00 for services performed by Rachel S. Blumenfeld, Esq.

21. Applicant has prepared this Fee Application with no intention of burdening this Court with each particular instance of work and services rendered. However, the Court is urged to review the time records of Applicant and Applicant is confident that many of the details of the work are reflected thereon, and further reflects the care, effort and detail that evidence the quality of representation provided to the Debtor.

22. Applicant submits that numerous telephone communications had with the Debtor, creditors and parties in interest are not necessarily reflected in the time records and that the actual time expended on this case exceeds the time reflected on Exhibit "A". In addition, Applicant has provided some services to the benefit of the estate and the Debtor since July 22, 2008 to date, but that Applicant is not asking for reimbursement of those fees and that time is not reflected on Exhibit "A".

## APPLICABLE LEGAL STANDARDS

23. Section 303(a) of the Bankruptcy Code provides that a Bankruptcy Court may

award to a professional employed under Section 327:

> (A) reasonable compensation for actual, necessary services rendered by the...attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.
> * * *
> (3)(A)  In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
> (A) the time spent on such services;
> (B)  the rates charges for such services;
> (C)  whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under the title;
> (D)  whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed; and
> (E)  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

24. Section 503(b)(2) of the Bankruptcy Code provides that:

> After notice and a hearing, there shall be allowed administrative expenses...including compensation and reimbursement awarded under section 330(a) of this title...

25. Although the Supreme Court has not ruled on the proper method for

determining reasonable fees under Section 330(a), the Court has established guidelines

generally applicable to awards of attorneys' fees under other federal statutes, which

require that the fee awarded be reasonable.  See  Pennsylvania v. Delaware Valley

Citizens' Counsel for Clear Air, 478 U.S. 546 (1986) (construing standards for award of

fees under § 304(d) of the Clean Air Act ("Delaware Valley I"); Pennsylvania v.

Delaware Valley Citizens' Counsel for Clean Air, 483 U.S. 711 (1987) ("Delaware

Valley II"). In <u>Delaware Valley I</u>, the court concluded that the "lodestar" approach to

determining the fees for services performed, as articulated in <u>Lindy Bros.Builders, Inc. v.</u>

<u>American Radiator & Standard Sanitary Corp.</u>, 487 F.2d 161 (3rd Cir. 1973), was

preferable to other, more subjective methods: "[T]he 'lodestar' figure includes most, if

not all, of the relevant factors comprising reasonable attroneys' fees." <u>Delaware Valley</u>

<u>Citizens' Counsel for Clean Air</u> at 565. Courts in this Circuit have generally followed the

lodestar guidelines for fee awards. <u>In re United States Football League</u>, 887 F.2d 408,

413 (2d Cir. 1989); <u>City of Detroit v. Grimmel Corp.</u>, 560 F.2d 1093, 1098 (2d Cir. 1977)

("<u>Grinnel II</u>"); <u>City of Detroit v. Grinnel Corp.</u>, 495 F.2d 448, 471 (2d Cir. 1974)

("<u>Grinnel II</u>").

      26. <u>Lodestar</u>. Under the lodestar calculation, a reasonable hourly rate is set by

the court based on a number of factors, including the difficulty of the task, the prevailing

market rate for counsel of the petitioner's experience, counsel's normal billing rate, and

the rates awarded by other courts in similar circumsntaces. In <u>Grinnel II</u>, the Second

Circuit calculated attorneys' fees by "multiplying the number of hours expended by each

attorney involved in each type of work on the case by the hourly rate normally charged

for similar work by attorneys of like skill in the area." <u>Grinnel II</u> at 1098. Once the base

or "lodestar" rate is established, "other less objective factors such as the risk of litigation,

complexity of the issues, and the skill of the attorneys, could be introduced to determine a

final fee amount." <u>Id.</u> The American Bankruptcy Institute favors the lodestar approach

as "giving the courts a simple mathematical formula to apply as the starting point for the

analysis, with the reasonableness inquiry narrowed principally to the hourly rate and time

spent factors." <u>American Bankruptcy Institute National Report on Professional</u>

Compensation in Bankruptcy Cases (G.R. Warner rep. 1991) p. 144.

27.  The first step to be taken in a lodestar analysis is to determine the nature and extent of services rendered.  As is set forth more fully in the foregoing paragraphs, and in Exhibit "A", Applicant has expended to date greater than a total of 34 hours in rendering legal services to the Debtor during the Application Period.  Applicant respectfully submits that the hours worked by Applicant were both reasonable and necessary.

28.  The next step to be taken is to establish a reasonable hourly rate.  Section 330(a) of the Bankruptcy Code provides for the award of reasonable compensation for actual and necessary services performed by professionals employed pursuant to Section 327 and 1103 of the Bankruptcy Code "based on the time, the nature, the extent, and the value of comparable services other than in a case under this title."  See also Collier on Bankruptcy ¶330.02, p. 330-12 (1st Ed. 1996).  The Bankruptcy Code thus rejects the "principle of economy" which existed under the Bankruptcy Act.  "Notions of economy of the estate in fixing fees are outdated and have no place in a Bankruptcy Code."  124 Cong. Rec. 11,0899 (daily ed. Sept. 28, 1978) (statement of Congressman Edwards on policies underlying Section 330).  In re Bible Deliverance Evangelistic Church, 39 B.R. 768, 774 (Bankr. E.D. Pa. 1984); In re Penn-Dixie Industries, Inc., 18 B.R. 834, 838 (Bankr. S.D.N.Y. 1982).

29.  Indeed, Congress has made clear that the fees paid in bankruptcy cases must be no less than those paid in other cases involving legal specialties with comparable complexities and responsibilities: "Bankruptcy specialists . . . if required to accept fees in all of their cases that are consistently lower than fees they could receive elsewhere, will not remain in the bankruptcy field." H.R. Rep. No. 595, 95th Cong. & Admin. News,

p. 5787.  Consistent with the intent of Congress as expressed in the legislative history of the Bankruptcy Codes, it is "necessary to compensate bankruptcy attorneys, whenever possible, at the highest rate of compensation available for their efforts."  In re Bible Deliverance Evangelistic Church, supra, 39 B.R. at 773.  See also In re Penn-Dixie Industries, Inc., supra 39 B.R. at 838 (a liberal standard of compensation is needed to "encourage successful administration of estates by attracting bankruptcy specialists of high quality").  In sum, Congress intends that allowance of professional fees in bankruptcy cases should be at market rates in the market in which they customarily practice.  In re Jenson-Farley Pictures, Inc., 47 B.R. 557, 578-79 (Bankr. D. Utah 1985).

30.  The rates being charged by Applicant are commensurate with those typically charged by Applicant and other firms in the Southern and Eastern District of New York as well as those of other firms specializing in bankruptcy matters.  Accordingly, the Lodestar amount of fees sought by Applicant (its customary hourly billing rate multiplied by the reasonable and necessary amount of time spent) is both reasonable and appropriate.

31.  The Johnson v. Georgia Highway Test.  The lodestar calculation has largely supplanted the twelve factor test of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), which had gained prominence under the Bankruptcy Act.  See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. at 546 (1986).  ("The lodestar figure includes most, if not all, of the relevant factors comprising a 'reasonable' attorney's fee"); In re Cena's Fine Furniture, Inc., 109 B.R. 575, 581 (Bankr. E.D.N.Y. 1990) (the Supreme Court makes clear that the lodestar amount is presumed to subsume the twelve factors acticulated by  109 B.R. 575, 581 (Bankr.

E.D.N.Y. 1990) (the Supreme Court makes clear that the lodestar amount is presumed to

subsume the twelve factors acticulated by Johnson); In re Paster, 199 B.R. 468, 469 (E.D.

Pa. 1990) (the lodestar method of fee calculation is the appropriate method of

determining attorney's fees in all federal courts, including the bankruptcy courts).  The

Supreme Court, in another context, acknowledged that the lodestar was the "centerpiece"

for the computation of a reasonable hourly rate; however, the Court suggested that the

twelve Johnson factors could be considered for adjustments to the lodestar calculation.

Blanchard v. Beraeron, 489 U.S. 67, 74 (1989).

32.  A number of courts do still adhere to the Johnson test,[1] or combine the two

tests by using the lodestar calculation and adjusting the resulting figure by reference to

the relevant Johnson factors.  See e.g., In re Nine Associates, Inc., 76 B.R. 943 (Bankr.

S.D.N.Y. 1987); In re Cuisine Magazine, Inc., 61 B.R. 210 (Bankr. S.D.N.Y. 1986); In re

Affinito & Son, Inc., 63 B.R. 495 (Bankr. W.D. Pa. 1986).

33.  Time, Nature and Extent of Services, Results Obtained and Related Factors.

Applicant maintained detailed time records which indicate the time spent and the nature

of the work performed by Applicant for the benefit of the estate during the period

covered by this Application.  As Exhibit "A" reflects, Applicant spent a considerable

amount of time in this matter reviewing documents, discussing issues with the Debtor,

attending hearings at the Office of the United States Trustee and preparing the petition

and accompanying bankruptcy schedules.  Further, Applicant believes that the time spent

---

[1] In Johnson, the Fifth Circuit declared that the following factors should be evaluated when a court is ruling on a fee application: (1) The time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusions of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. See Johnson, supra, at 717-19.

was justified by the beneficial results that have been achieved thus far. This is a difficult case. The divorce proceedings have been pending in the Supreme Court for over three years, with constant litigation between the parties. From the beginning, the Debtor has been adamant that her husband will be extremely adversarial and opposed to all of the Debtor's attempts to reorganize. It is extremely likely that this Chapter 11 case will generate a significant amount of creditor activity throughout the course of the Debtor's Chapter 11 proceedings.

34.  The services rendered were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue or task addressed. Whether reviewed individually as to each of the tasks described above or collectively as a whole, the time expended by Applicant has been reasonable and efficient to accomplish the needs of the Debtor and its estate in this Chapter 11 case.

35.  The Skill Requisite to Perform the Legal Services Properly. In order to perform the services and obtain the results required in its representation of the Debtor, legal skill and experience were required.

36.  Preclusion of Other Employment. Adequate representation of the Debtor in this proceeding has required a substantial commitment of Applicants time. Although Applicant was not precluded as a result of its representation of the Debtor from accepting other engagements, matters in this Case were treated by Applicant in an expeditious and professional manner. Also, various matters on behalf of the Debtor required Applicant to devote considerable time, often to the preclusion of expending time on other active matters within Applicant's office.

37.  Time Limitations or Other Circumstnaces. Many of the matters on behalf of

the Debtor have required the necessity for rapid resolutions on an expedited basis, while being attentive to the needs and circumstances of the Debtor. Applicant kept all time deadlines imposed by the Court during her retention.

38. <u>Amounts Involved and Results Obtained</u>. Applicant through its services has endeavored in assisting the Debtor in filing her required Schedules, attending meetings with The Office of the United States Trustee, and complying with their guidelines and numerous document requests.

39. <u>The Customary Fee</u>. Applicant has charged its regular hourly rate in this matter.

40. <u>Awards in Similar Cases</u>. The amount requested by Applicant is not unreasonable in terms of awards in cases of similar magnitude and complexity. The compensation requested by Applicant comports with the mandate of the Bankruptcy Code, which directs that services be evaluated in light of comparable services performed in non-bankruptcy cases in the community. The hourly rate requested by Applicant is billed by Applicant to both its court-approved and regular commercial clients. The hourly rates awarded in similar cases have been higher than that sought by Applicant.

41. <u>Whether the Fee is Fixed or Contingent</u>. Applicant's compensation in this Chapter 11 case is subject to the approval of the Court.

42. <u>The Experience, Reputation and Ability of the Attorneys</u>. The Applicant is experienced in matters of this kind. Rachel S. Blumenfeld, Esq., represented the Debtor exclusively for the period in which she is seeking compensation. Applicant is a 2000 graduate of Brooklyn Law School, and has been practicing in the area of bankruptcy since graduating from law school. She was admitted to practice to both the Courts of

this State as well as the United States District Courts for the Southern and Eastern Districts of New York in 2001. Applicant previously clerked for a Bankruptcy Judge in the Southern District of New York. In 2004, The Brooklyn Bar Association Volunteer Lawyers Project awarded Applicant The Christopher Slattery Young Professional Award for her pro bono services. Applicant has represented debtors, creditors and trustees for more than five (5) years and has litigated cases on behalf of debtors, creditors and trustees.

## CONCLUSION

43. THE LAW OFFICE OF RACHEL BLUMENFELD, submits that it has responsibly provided legal services to the Debtor and the estate. Applicant has expended in excess of 34 hours through July 22, 2008, and requests allowance of $8,500.00 be awarded to the Applicant.

44. Applicant has attempted to attend to each and every required activity relating to the Chapter 11 case in an expeditious, efficient and economical matter in order to provide the maximum benefit to this estate.

45. During the course of Applicant's retention during the period of request herein, Applicant has been caused to render more than 34 hours of professional services to the Debtor. The professional services rendered by Applicant demanded a high degree of Applicant's professional competence and professional responsibility.

46. In conformity with the practice of Applicant and due to the pressures of other business matters during the course of the day, not every single minute detail for Applicant's services were recorded by Applicant, and Applicant is not seeking compensation for said time, but asks the Court to take cognizance of this.

47. In view of the difficulties inherent in this case, the amount of legal services performed, the time consumed, the skill required by Applicant, Applicant requests that it be allowed the sum of $8,500.00 as compensation for all professional services rendered from July 2, 2008 through July 22, 2008. Applicant respectfully asks the Court to note that the amount of compensation requested by it is most reasonable in light of the services performed and the beneficial results obtained to date.

**WHEREFORE,** it is respectfully requested that this fee application be approved in its entirety, that the Applicant be directed to turn over to either Mrs. Esther Newhouse or to Debtor's new counsel THE LAW OFFICE OF JOEL SHAFFERMAN any sums in excess of the fee application awarded to Applicant, which sums have cleared Applicant's account, together with such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
      July 28, 2008

                  THE LAW OFFICE OF RACHEL BLUMENFELD

                  BY:   */s/ Rachel S. Blumenfeld*
                      Rachel S. Blumenfeld
                      26 Court Street, Suite 600
                      Brooklyn, New York  11242
                      (718) 338-4114