UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:

        **Chapter 11**
        **Case No: 1-08-4421**

CHANA TAUB,

        **MOTION TO DISMISS**
        Debtor.        **CHAPTER 11 CASE OR**
        **CONVERT**

--------------------------------------------------------X

TO THE HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE

      The Application of Simon Taub ("Simon"), husband of the Debtor, in support of his Application to Dismiss the Chapter 1 Case or convert, by Leo Fox, his attorney respectfully representing:

      1.     This Chapter 11 case is a classic bad faith filing, filed solely to further the Debtor's litigation purposes in the pending Divorce Action in the New York State Divorce Court (pending since May 2007). Indeed, the Debtor made it clear at the Section 341 meeting that she intended to take possession of the rent income from the properties (contrary to the prior State Court Orders that Simon would collect the rent and pay expenses from such rent) and misappropriate the monies for her own purposes.

      2.     Having engaged and lost in scorched earth tactics in State Court, the Debtor now seeks to shift the battleground to the Bankruptcy Court.

      3.     But now, the Debtor is attempting to use both fora to accomplish her litigation ends. As this Application was being prepared, Simon was served with a Motion dated July 23, 2008 by the Debtor filed in State Court (Exhibit A ) seeking among other things, interference in the State Court's Orders to direct Simon to collect rent. Although the Debtor has been previously accused of

"judge shopping" by State Judge Krauss in December 2007 (Exhibit B), this represents the epitome of chutzpah; to utilize both Courts at the same time to seek the same thing; the rents which the Debtor has already shown she cannot be trusted to collect.

4. At the Section 341 Meeting, (transcript will be filed upon receipt), the Debtor acknowledged that she would not pay the expenses and mortgages and explained her Chapter 11 plan was to continue litigation with Simon in State Court and use the monies received upon such litigation to pay the mortgages.

5. This case has all the earmarks of a bad faith filing: a pending litigation, no real creditors, the availability of the State Court to grant relief, the need of the State Court to determine the rights of the parties, the use of the Bankruptcy to effect litigation goals and not reorganization, no real third party creditors. This Court should dismiss this case forthwith.

## BACKGROUND

6. The Debtor commenced her first Divorce Action by Complaint in Kings County dated September 30, 2005. She then proceeded to undertake the following activities at about the time she commenced the first Divorce Action. The Debtor swore out allegations against Simon of abuse, resulting in an Order of Protection being issued against Simon in favor of Plaintiff dated August 29, 2005, as part of a motion by Debtor to obtain exclusive occupancy of the marital home. The Debtor surreptitiously refinanced the marital home at 4823 14th Avenue (a/k/a 1405 49th St.) for $650,000 in violation of a TRO of the State Court and failed to account for the refinance proceeds (see infra)[1].

---

[1] The Debtor had misappropriated in excess of $1,000,000.00 prior to and during the Divorce Action, see infra at ¶14.

7. However, the Courts ultimately determined that the Debtor's claims were not credible and she was not entitled to the demands she made in the State Court. Both State Judges Krauss (in August 2005) and Demarest (in January 2007) ordered Simon to collect the rent (Exhibit C).

8. Judge Krauss ultimately denied the Debtor's motion for exclusive occupancy by Order dated August 29, 2005 which was affirmed by the Appellate Division in a Decision dated October 3, 2006, which stated, inter alia, that the wife's allegations were "incredible" (Exhibit D).

9. The Debtor's first action for divorce was unanimously dismissed after a jury trial on March 27, 2007 that found that Simon's conduct did not render the Debtor unsafe nor was it improper for Simon to live with the Debtor. The State Court ordered on April 4, 2008 that henceforth the Debtor could not seek Orders of Protection against Simon, *ex parte* (Exhibit E). The Court denied another attempt on May 1, 2007 for the Debtor to have exclusive occupancy of 4823 14th Avenue, a/k/a 1409 49th Street (Exhibit F).

10. In the First Divorce Action, the Court, on the record on September 7, 2006, rejected repeated attempts by the Debtor to collect the rents on the properties "in her name" because she was "profiting" (Exhibit G).

11. The Second Divorce Action was commenced by the Debtor in May 2007 in New York County (in another example of forum shopping) and was transferred to Kings County. The Debtor was first allowed to collect rents on two (2) properties. Pursuant to Order dated June 1, 2007 (erroneously using the caption of the first Divorce Action), the State Supreme Court directed that the rents for 1259 52nd Street and 4819 14th Avenue be collected by the Debtor and expenses of the properties be paid by the Debtor. Pursuant to such Order, the Debtor collected the rents each month but failed to pay any expenses, resulting in the State Supreme Court stating in the Transcript of

October 30, 2007 that the Court had made a mistake in permitting the Debtor to collect rents and the Court proceeded to vacate its prior Order, resulting in a written Order dated, October 30, 2007 and Simon again being permitted to collect rents.

12. The Debtor's request to stay the October 30, 2007 Order, preventing the Debtor from collecting rent made to the Appellate Division was denied by Order, dated November 21, 20007. The Debtor's motion to the Appellate Division to reargue the previous denial was denied by Order, dated January 15, 2008. (Copies of the 6/1/07 Order, 10/30/07 transcript, 10/20/07 Order, 11/2/07 Request for, and denial of stay, 11/21/07 denial by the Appellate Division and the 1/15/08 denial of Debtor's reargument motion by the Appellate Division are collectively annexed hereto as Exhibit H). These Orders confirm the binding and final decision of the State Courts that the Debtor should not, and is not trustworthy, to collect rents. However, the Debtor continued to collect rent from the vacation home located at 85 Forshay, Monsey, New York, but failed to pay any expenses.

## THE DEBTOR'S MISAPPROPRIATION OF RENTS AND ASSETS

13. In the past year, June 2007 - June 2008, the Debtor has collected in excess of $36,000 in rent and failed to account for or pay any expenses from these funds.

```
Property 4819 14th Street
      838 x 13 =              $10,894
      1580 x 5 =                7,900

Property 1259 52nd Street
      131 x 5 =                  655

Property 85 Forshay
      1850 x 9 =               16,650

                              $36,099
```

Of this amount, the Debtor received at least $17,283 in 2007.

4

| | |
|---|---:|
| 85 Forshay | 3,700 |
| 4819 14th Avenue | 12,928 |
| 1259 52nd Street | 655 |
| | $17,283 |

Yet, the Debtor alleges income of far less on her Statement of Affairs and Statement of Income

14.   In contrast from March 2007 to July 21, 2008, Simon collected $45,548 in rent from 4819 14th Ave and 1259 52nd Street and paid $65,057 in expenses (Exhibit I).  The Debtor also managed to misappropriate substantial sums prior to and during the Divorce Action, as follows (collectively, Exhibit J):

$200,000 from the safe (see attached);

$24,000 (see attached);

$650,000 from Mortgage (see infra);

$30,000 from hidden accounts (see attached);

$200,000 from silver (see attached);

$40,000 from my personal jewelry (see attached);

$5,000 Chana sold Simons electric bed against Court Order (see attached Transcript).

**TOTAL: $1,149,000**

## THERE ARE NO REAL CREDITORS

15.   The Bankruptcy Schedules and Statement of Income (Exhibit K) reflect that there are no real creditors other than several attorneys involved in the matrimonial proceedings which can be resolved in the State Court.  The Secured Creditors schedule reflects primarily mortgages.

16.   The Irwin Rosenthal judgment lien for attorneys fees made by the Debtor violates the State anti encumbrance order of Judge Krauss and is unsubstantiated and can be dealt with in the

State Court. Steven Baum is an attorney for the mortgagee on 4819 14th Avenue and the 85 Forshay Road vacation house, and should not have a direct claim against the Debtor.

17. All the priority claims (schedule E) relate to the real properties, some of which were paid by Simon and all of which will be paid when the properties are sold at the direction of the State Court.

18. Even more problematic is the Unsecured Creditor list. (Schedule F) None of the unsecured debts are listed on the Debtor's verified Statement of Net Worth filed in her second Divorce Action of April of this year. (Exhibit L at pp. 13 and 14).

19. The Malka Scharf lawsuit for $12,500,000 is a lawsuit by the Debtor's daughter(not Simon's natural daughter) for slander and libel against the Debtor. The slander arises out of the trial of the first Divorce Action as referred to in the affidavit of Malka Scharf (Exhibit M). Such lawsuit if proven would be a non dischargeable claim under Section 523 and would continue whether or not the bankruptcy case was dismissed.

20. The lawsuit involving David Grauer was discontinued as evidenced by the Attorney correspondence (see Exhibit N).

21. The Drukman firm represented the mortgagee at 4223 14th Avenue. Such claim shall be paid by the mortgagee, not the Debtor. Esther Newhouse, the Debtor's twin sister, stated at the Section 341 hearing on July 21, 2008 that she contributed monies to the Debtor and in fact gifted monies to the Debtor. The issue can be addressed in the State Court action.

22. Franklyn Snitow is Simon's lawyer and never demanded any monies from the Debtor. The Meridian Action was discontinued as stated above. The Hudgson Russ claim relates to the

Constructive Trust Action and the import of the action is constructive trust, not a money judgment. This action is pending and can be resolved in the State Court. Stephen Hand is involved in the guardian proceeding of Moshe Traub and has not requested any money from the Debtor.

23. Townsend & Valnek, is the Debtor's attorneys for the Constructive Trust State Court action, where these attorneys continue to represent the Debtor and where its fees can be determined as easily as in this Court.

24. Irwin Rosenthal, the Debtor's former divorce attorney, has a judgment lien in violation of the State Court Order and this claim should also be resolved before a State Court where such attorney rendered his services.

25. As noted above, Jeffrey Schriber, Simon's attorney, obtained a dismissal of the Protection Order, obtained by the Debtor at the start of the first Divorce Action, because the Debtor had lied and claimed that Simon had engaged in abusive conduct. Schreiber obtained an Order which prohibits the Debtor's *ex parte* application for a protective order. Simon and his attorney have not asked for any money damages from the Debtor for this outrageous fabrication perpetrated by the Debtor.

26. Karesik is the Debtor's attorney and may be owed sums which can be dealt with in State Court.

27. Kassoff Russ is attorney for Moshe Taub, Simon's father, in connection with the 1259 52nd Street home of Moshe Taub. The graveman of the constructive trust action is constructive

trust, not money damages and Kassoff Russ has not requested any attorney's fees from the Debtor. This Action must be resolved whether in Bankruptcy or State Court and the case is already pending in State Court.

28.     Madeline Nisonoff (Mallow Kowton & Hager) is Simon Taub's attorney who never requested any fees or monies from the Debtor.

29.     Neil Lovino is one of the Debtor's attorneys. Patrick Hayes is the Debtor's attorney in the foreclosure proceeding which the State Court had directed be sold.

30.     In summary, all of the Debtor's creditors are her attorneys who are either continuing to work with the Debtor and will undoubtedly be paid at the conclusion of the Divorce Action or former attorneys who can seek relief in the Divorce Action and be paid at the conclusion of the Divorce Action.

## THE REAL ESTATE PROPERTIES ARE
## BETTER DISPOSED OF IN STATE COURT

31.     The Debtor lists four properties on her Schedules (Schedules and Statement of Income annexed as Exhibit K) as being owned by her alone or on a joint basis with the Debtor's husband, Simon (Schedule A). Each of these properties is scheduled as having very substantial equity, totaling in excess of $3,500,000. Thus, it is clear that substantial equity exists to pay all Secured Creditors here if the marital properties are sold and the proceeds allocated as directed by the

Divorce Court. The Debtor is not able to articulate any good reason why, in a case with this much

equity, she seeks to defeat the jurisdiction of the State Supreme Court which she invoked by bringing her second Divorce Action.

32. The Schedules themselves confirm that this entire bankruptcy case is nothing more than an attempt to seek a tactical advantage in divorce actions pending in the Supreme State Court. At the Section 341 meeting held on July 21, 2008 (a Transcript not yet available will be supplied before the return date of this motion), the Debtor clearly stated that her "plan" did not contemplate that she would pay to cover the expenses of the various properties but that she would seek to take control of the "income" of these properties and would arrange to settle up with the Creditors once she was able to receive what she believes to be substantial sums in connection with the Divorce Action.

## 85 FORSHAY ROAD

33. This Chapter 11 case was purportedly filed on July 1, 2008 to "protect" a vacation home located at 85 Forshay Road, Monsey, New York, which was the subject of a foreclosure action scheduled for foreclosure on July 1, 2008. The Schedules reflect that the value of the property is $500,000 and there exists a $280,000 mortgage. The property is jointly owned by the Debtor and Simon as is reflected on the Schedules. The Debtor testified at the Section 341 meeting that the income from the tenant of approximately $1,850 was exceeded by expenses and mortgage payments of over $2,900 a month.

34. The foreclosure sale of this property was scheduled for July 1, 2008.

35. At a hearing held in the New York State Supreme Court on July 1, 2008, (Exhibit O)

9

the Debtor claimed the rent was $1,600 a month (Tr., p. 26). The Debtor's Declaration of Income, dated July 16, 2008 (see Schedules, Exhibit K), reflects $1,700 a month income from such tenant and the Debtor testified at the Section 341 meeting on July 21, 2008, that the rental income was $1,850 per month. The Debtor had failed to use the money to pay expenses or mortgage payments from the $9,600 which she collected in the six months before the bankruptcy filing as noted at the July 1, 2008 hearing in State Court. The Court found, therefore, that Simon would not be required to pay maintenance to the Debtor because of this misappropriation of rents by the Debtor. (Tr. pp. 28-30).

## 4823 14TH AVENUE
## a/k/a 1405 49th STREET

36. The marital property is described as 4823 14th Avenue, with a scheduled value of $1,300,000 and mortgages of $650,000. (see Schedule A) This property was acquired by the Debtor by Deed dated December 1, 1993 from Simon to Chana, on the same day that a refinancing of the mortgage took place (Deed and mortgage are attached hereto as Exhibit P).

37. On September 12, 2005, on or about the day that the Debtor commenced her first Divorce Action, the Debtor surreptitiously signed a mortgage application for this property, which alleges, among other things, that she owned 85 Forshay Road outright and that there were no pending litigations at the time that the Divorce Action was pending (Exhibit Q). Ultimately, the Debtor received $650,000 as part of the refinancing of such property at the closing leaving the present mortgage debt, not in the amount of $650,000, but with interest approximately $750,000 as reflected

on the Debtor's Schedule D at the first and second items. The Debtor never accounted for the refinance money, and never paid any mortgage payments.

38. Pursuant to Order, dated September 6, 2006, the State Supreme Court ordered Simon to pay $3,000 a month against this Debtor created mortgage, as well as utilities, and the Debtor was directed to pay the balance due from the proceeds of her refinancing. Simon paid the amounts he was required to pay, but the Debtor did not pay the amounts directed by the Court. As was noted by the State Supreme Court on March 27, 2006 (Exhibit R), in querying the Debtor's divorce attorney, "is it your position that the Defendant [Simon] should be responsible for the mortgage that the Plaintiff took out post TRO?" Because the mortgagee did not receive the Debtor's share of payments, the mortgagee rejected Simon's partial payments, resulting in the foreclosure proceedings commenced against the Debtor.

### 1259 52ND STREET

39. The property known as 1259 52nd Street is scheduled of having a value of $1,500,000 with no mortgages. The property was originally titled in the name of Moshe Taub, who purchased such property in 1979 with his wife by deed dated December 27, 1979 (Exhibit S. Moshe Taub is the father of Simon, is 90 years of age, and a Holocaust survivor. On July 24, 1997, Moshe Taub transferred the property to his daughter-in-law, the Debtor, ostensibly to allow Moshe to be eligible for certain health benefits. The Debtor never paid a penny of the property's expenses and never collected any income for the property.

40. Moshe continued to reside at such premises without cost or expense and received the benefits of the rental income of approximately $3,600 per month. (In the past 15 months, the tenant, Perlmutter, has refused to pay her rent of $540 per month with support of the Debtor.) Moshe Taub

was declared an Incapacitated Person and his daughter Pnina Kaufman, Simon's sister, was appointed his Guardian, pursuant to a Guardianship proceeding under Index No. 100143/07. This property was the subject of Constructive Trust proceedings in the New York State Supreme Court in which it is alleged that the Debtor holds this property only in Trust and as Nominee.

41. The Debtor has alleged that this property was gifted to her despite the existence of seven (7) children of Moshe, who cared for him and attended to his physical needs. The Debtor has also sent a lawyer's letter dated June 29, 2007, demanding that Moshe Taub, an incapacitated 90 year old holocaust survivor who allegedly "gifted" the property to the debtor, pay rent of $900 per month (Exhibit T).

42. During the course of a recent Landlord/Tenant action against a Tenant named Esther Perlmutter, who has not paid rent for in excess of a year, the Debtor filed an Order to Show Cause in May of 2008 stating that this tenant should not have to pay rent and seeking to dismiss the Landlord/Tenant case (Exhibit M). Simon's attorney offered to post all rents received from Perlmutter into an escrow account subject to a court order, which offer was refused by the Debtor. The Debtor undertook this action to deprive the property of rental income despite Simon's attorney's offer and despite the Orders of the Court that Simon should be the responsible party to collect rent and pay expenses. Although the Debtor collected rents for at least six months, between June and November 2007, the Debtor failed to pay the expenses during such period as directed by the Court resulting in Simon paying $4,800 for such items as insurance, taxes, Con Ed and Keyspan (see Exhibit H). The Court's June 1, 2007 decision to permit the Debtor to collect rents was reversed on October 30, 2007 (see supra).

## 4819 14TH AVENUE

43. The property known as 4819 14th Avenue is scheduled as having a value of $1,500,000 with a mortgage of $150,000. Although the Deed reflects that the property is owned by the Debtor, Simon purchased the property with his funds, Simon always paid all of the taxes and expenses of $1,000 per month and the mortgage payment of $3,000 per month and collected the income of $2,900 per month until the Court allowed the Debtor to collect rent for the six months June 1, 2007 through November 2007. The Debtor improperly took $18,794 for herself during the past year but never paid any expenses (see, supra). Reference is made to the comments of the Court to the effect that Judge Demarest made a mistake in having permitted the Debtor to collect rents because she had not paid any expenses as directed by the Court.

## DISMISSAL OF THIS BAD FAITH FILING IS APPROPRIATE UNDER SECTION 1112(b)

44. Section 1112 (b)(1) of the Bankruptcy Code provides in relevant part that the Court may dismiss a Chapter 11 case if "cause" is established. "Cause" here includes diminution of the estate and no likelihood of rehabilitation [1112(b)(4)A]. A case may be dismissed as a bad faith filing even without an evidentiary hearing (*In re C-TC 9th Avenue Partnership*, 113 F3d 1304 (2nd Cir. 1997.)

45. It has been stated that "[t]wo inquiries are particularly relevant to whether Chapter 11 cases should be dismissed based on debtor's lack of 'good faith' in filing it: (1) whether petition serves a valid bankruptcy purpose, e.g. by preserving debtor as a going concern or maximizing value of a debtor's estate; and (2) whether petition was filed merely to obtain tactical litigation advantage. [citation omitted]." 4A Bankr. Service L.Ed. section 43:216.

46. It is well-settled that "[t]he bankruptcy courts will not entertain cases filed primarily

as litigation tactics by spouses engaged in 'scorched earth legal wars." In Re Newman, 196 B.R. 700 (Bkrtcy. S.D.N.Y. 1996)(where Chapter 7 debtor's former wife moved for relief from automatic stay so she could enforce prepetition order for child support and maintenance) Furthermore, the Bankruptcy Court of the Southern District of New York explained that "Federal Courts recognize the special expertise of State Courts in domestic relations matters [citations omitted]. Accordingly, bankruptcy courts will generally defer to State Courts in the interest of judicial economy and restraint and out of respect for the State Courts' expertise in domestic relations issues." 196 B.R. at 704.

47. In In Re Purpura, 170 B.R. 202 (Bkrtcy E.D.N.Y. 1994), a former wife moved to dismiss her former husband's Chapter 11 case, on the ground that it had been filed in bad faith. The Eastern District Bankruptcy Court dismissed the case, holding that it was a bad faith attempt to forestall the former wife's efforts to collect on divorce decree obligations. The Court found that "Purpura's financial posture negates any legitimate reorganization purpose." 170 B.R. at 207. "Plainly Purpura is employing Chapter 11 as an offensive weapon in this two party fracas, contrary to the principle that our 'bankruptcy laws are intended as a shield, not as a sword. In re Penn Central Trans. Co, 458 F.Supp, 1346, 1356 (E.D.Pa. 1978)" Id at 207.

48. Thus, "[w]here, as here, a debtor's Chapter 11 effort involves essentially a two party dispute based on state law, and the filing for relief represented a litigation tactic to stall and impede the enforcement of legal rights against the debtor, dismissal for 'cause', i.e., a bad faith filing, is warranted." Id. at 207.

49.     In Carver v. Carver, 1954 F.2d 1573 (11th Cir. 1992), the Eleventh Circuit reversed the Bankruptcy Court for the Southern District of Georgia, holding that the bankruptcy court should have abstained from hearing a Chapter 13 debtor's claim for violation of the automatic stay where the alleged violation involved the enforcement of the debtor's divorce decree obligation. The Court explained:

> "Nor was it 'the 'intent of the Bankruptcy Code to convert the bankruptcy courts into family or domestic relations courts – courts that would in turn, willy-nilly, modify divorce decrees of state courts insofar as these courts had previously fixed the amount of alimony and child support obligations of debtors.'" [citations omitted]. 954 F.2d at 1579.

50.     In In Re Huckfeldt, 39 F.3d 829 (8th Cir. 1994), the Eighth Circuit affirmed the Bankruptcy Court's dismissal of a debtor's Chapter 7 case, finding that "cause" existed for dismissal of this Chapter 7 case filed for the purpose of frustrating a State Court divorce decree. The Court stated that it was dismissing because Debtor filed the petition was filed in bad faith, for the purpose of frustrating the divorce court decree and forcing his ex-wife into bankruptcy at a time "when his financial prospects made him anything but the 'honest but unfortunate debtor' needing Chapter 7 relief. 39 F.3d at 832.

51.     In In Re Moog, 159 B.R. 357 (S.D.Fla. 1993), the former spouse of a Chapter 11 debtor filed a motion to dismiss the petition, or in the alterative, for abstention. The Bankruptcy Court dismissed this petition, which had been filed by a solvent debtor as a litigation tactic to circumvent the State Court's efforts to enforce a divorce decree, finding that the petition had been filed in bad faith. The Court found that the Debtor's plan revealed that he filed "the plan to get out of a bad deal." 159 B.R. at 362. The Court stated that "[t]his case is a two-party dispute which can and should be resolved to its conclusion in the State Court forum where it began." Id at 362.

52.     The Court went on to state,

15

> "The fact that the dispute here is between former spouses and arises out of a state court dissolution judgment is of some relevance to the bad faith analysis. The Court finds that Chapter 11 petitions filed to alter the obligations of spouses must be viewed with greater scrutiny than petitions filed to restructure or reorganize other financial affairs of a debtor." 159 B.R. at 364.

53. See also, In re Taylor, 216 B.R. 366, 368 (Bkrtcy S.D.N.Y. 1998), reversed on other grounds 233 B.R. 639 (S.D.N.Y. 1999) ("The Bankruptcy Court should not permit itself to become unnecessarily involved in the 'scorched earth' legal wars between spouses."); In Re Mickler, 344 B.R. 817 (W.D.Ky. 2006)(case dismissed because filed other than in good faith, where Debtor sought to reduce alimony payments)

54. This case is about the Taubs and their Divorce Action. There are no unsecured creditors here. The creditors all arise from and can be dealt with in the Divorce Actions.

55. A Chapter 7 case will not render any benefit to this matter. Any stay which is available in this Court is available in the State Divorce Court on motion. The issues of the rights of the parties or the properties are being adjudicated in the State Court, and this Court cannot and should not vary or modify the rights of the spouses.

56. There is substantial equity in the properties. It would be the height of inequity to allow the Debtor to use the Bankruptcy to force "unsecured creditor status" on Simon, where the Debtor's creditors, to the extent that they exist, can easily be paid from the Debtor's share of any assets at the conclusion of the Divorce Actions.

## A HEARING SHOULD BE HELD ON SHORTENED NOTICE

57. It is respectfully requested that a hearing be held on shortened notice. The urgency of this matter militates against waiting 20 days as provided by the Bankruptcy Rules.

58. The Taubs have been involved in litigation since 2005 and the Debtor does not

require a lengthy time period to respond to this Application in light of her familiarity with this matter. The creditors are by and large illusory and in any event as present and former attorneys of either of the Taubs, all are familiar with these matters and do not require a lengthy time period to respond. Likewise the mortgagees are quite familiar with the divorce proceedings and can make their voice heard prior to the hearing date.

59. There is a need to resolve this issue as quickly as possible. As noted by the State Supreme Court, at the July1, 2008 hearing (see Exhibit B), the Court is waiting to see what this Court will do in connection with the assets. The bankruptcy filing has derailed the Divorce Action, an action commenced by the Debtor, and this must be resolved as quickly as possible for full relief to be given to the parties.

WHEREFORE, it is respectfully requested that the Court grant the relief sought herein and grant such other and further relief as is proper.

Dated: New York, New York
       July 30, 2008

                                                s/ Leo Fox
                                                Leo Fox, Esq.
                                                630 Third Avenue
                                                New York, New York 10017
                                                Phone: (212) 867-9595
                                                Fax:   (212) 949-1857

A:\motion to dismiss 7-28-08.wpd