UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:

      CHANA TAUB,                             Chapter 11

          Debtor.                   Case No. 08-44210-ess
---------------------------------------------------------------x

# MEMORANDUM DECISION ON MOTION FOR
# RELIEF FROM THE AUTOMATIC STAY

Appearances:

Dennis Houdek, Esq.                   Leo Fox, Esq.
305 Broadway (7th floor)           630 Third Avenue
New York, NY 10007               New York, NY 10017
Attorney for Chana Taub           Attorney for Simon Taub

James Sullivan, Esq.
Arent Fox LLP
1675 Broadway
New York, NY 10019
Attorney for Esther Newhouse

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion for relief from the automatic stay (the "Lift Stay Motion")

by Simon Taub, the estranged husband of Chana Taub, the debtor in this Chapter 11 case (the

"Debtor").  Mr. Taub moves for an order pursuant to 11 U.S.C. § 362(d)(1), terminating the

automatic stay to allow him and the Debtor to proceed to conclusion and the entry of judgment

with the matrimonial action (the "Second Divorce Action") pending in the New York State

Supreme Court, County of Kings (the "Supreme Court, Kings County"), with enforcement to

take place in this Court.

A hearing on the Lift Stay Motion was held on July 22, 2009, at which counsel for Mr.

Taub, counsel for the Debtor, and counsel for Esther Newhouse appeared and were heard.  Based

upon the entire record and consideration of the relevant factors, the arguments of counsel, and

for the reasons stated below, the Lift Stay Motion is granted as set forth below.

### Jurisdiction

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b)

and 157(b)(1).

### Procedural History

On July 1, 2008, the Debtor filed a voluntary petition for relief under Chapter 11 of Title

11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for

the Eastern District of New York.  The Debtor continues to operate and manage her business and

property as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

On June 1, 2009, Mr. Taub filed the Lift Stay Motion to permit the Second Divorce

Action pending in the Supreme Court, Kings County to proceed to conclusion and the entry of

judgment on all issues, including equitable distribution, with enforcement to take place in this

Court.  Docket No. 260.  In support of the Lift Stay Motion, Mr. Taub filed an application (the "S. Taub App.") and his affirmation.

On June 23, 2009, Chana Taub filed a Brief of Debtor in Opposition to Simon Taub's Lift Stay Motion (the "Debtor's Opp."), as well as her affirmation and the affirmation of Dennis Houdek (the "Houdek Affirm.").  Docket Nos. 271-73.

On June 25, 2009, Esther Newhouse, a creditor in the Debtor's bankruptcy case, filed a Joinder in Support of Brief of Debtor in Opposition to Simon Taub's Lift Stay Motion (the "Newhouse Joinder").  Docket No. 276.

On July 6, 2009, Mr. Taub filed a reply to the Debtor's Opposition to Simon Taub's Lift Stay Motion.  Docket No. 281.

On June 1, 2009, Mr. Taub also filed motions to abstain in *Chana Taub v. Simon Taub*, Adversary Proceeding No. 08-1170 (the "08-1170 Abstention Motion"), and in *Chana Taub v. Simon Taub, 10 Grand Avenue LLC, Rachel Taub, and Perl Fein*, Adversary Proceeding No. 09-1027 (the "09-1027 Abstention Motion").  In these motions, Mr. Taub seeks orders providing that the Court abstain from deciding the claims in the adversary proceedings on grounds that the claims are based on equitable distribution claims asserted by the Debtor in the Supreme Court, Kings County.

### Background

The Debtor and Mr. Taub have been engaged in contentious and acrimonious litigation, including two divorce actions, in the New York state courts since 2005.  The Debtor commenced a divorce action against Mr. Taub in the Supreme Court, Kings County on June 17, 2005 (the "First Divorce Action").  Debtor's Opp. at 2.  The First Divorce Action was dismissed after a

jury trial on March 27, 2007.  Debtor's Opp. at 4; S. Taub App. ¶ 1.  During the pendency of the

First Divorce Action, three of the four judges to whom the matter was assigned recused

themselves.  S. Taub App. ¶¶ 6-7.

As the schedules filed with the Debtor's bankruptcy petition reflect, the Debtor claims an

interest in several properties.  The Debtor's schedules state that she claims an interest in three

properties titled solely in her name located at 1259 52nd Street, 4819 14th Avenue, and 1405

49th Street, in Brooklyn, New York, and in property titled jointly in the Debtor's and Mr. Taub's

names located at 85 Forshay Road, Monsey, New York.  Docket No. 12 (Schedule A).  These

four properties are the subject of Adversary Proceeding No. 08-1424 filed by Pnina Kaufman as

guardian for Moshe Taub, Mr. Taub's father, against the Debtor, in which Ms. Kaufman seeks

the imposition of a constructive trust in favor of Moshe Taub on grounds that he placed these

properties in the Debtor's name in reliance on promises that she would reconvey them to him

upon his request.  Adv. Pro. No. 08-1424, Docket No. 1.  And the properties are the subject of an

action in the Supreme Court, Kings County brought by Ms. Kaufman on February 21, 2006,

seeking similar relief (the "Kaufman State Court Action")  Adv. Pro. No. 08-1170, Docket No. 1

(Complaint ¶ 28).

The Debtor also claims an equitable interest in three properties which were titled solely

in Mr. Taub's name and conveyed by Mr. Taub to his daughters following the First Divorce

Action.  Docket No. 12 (Schedule A).  These three properties are located at 6-8 Grand Avenue,

10 Grand Avenue, and 23-27 Grand Avenue, in Brooklyn, New York (the "Grand Avenue

Properties"), and are the subject of Adversary Proceeding No. 09-1027, the 09-1027 Abstention

Motion, and the Kaufman State Court Action.

Soon after the dismissal of the First Divorce Action, in May 2007, the Debtor

commenced the Second Divorce Action (the "Second Divorce Action") in the Supreme Court,

New York County, and that action was subsequently transferred to the Supreme Court, Kings

County. S. Taub App. ¶ 2. In that action, the court deferred to the Kaufman State Court Action

the issues of the appointment of a receiver and ownership of the alleged marital properties.

Houdek Affirm. Exh. F (October 30, 2007, Order (Demarest, J.)). *See* Debtor's Opp. at 7-8.

Since filing her Chapter 11 bankruptcy petition, the Debtor has commenced several state

court proceedings that relate to the Second Divorce Action and the equitable distribution issues.

The Debtor sought the recusal of Justice Carolyn E. Demarest, the fourth judge to whom the

Second Divorce Action was assigned, on grounds of bias. S. Taub App. ¶ 9; 08-1170 Abstention

Motion, Exh. A (February 11, 2009, Decision and Order (Demarest, J.)). The Debtor's request

was denied and an appeal of that decision is pending.[1] S. Taub App. ¶ 19. *See* Docket No. 300

(July 23, 2009, letter from Chana Taub) (questioning the fairness of the state court proceedings).

On July 23, 2008, the Debtor filed a motion in the Second Divorce Action for an

---

[1] In denying the Debtor's motion for recusal, Justice Demarest observed:

Plaintiff's purpose in making the instant motion to recuse is to obtain yet another
forum and another Judge who will be unfamiliar with the history of this case in
the hopes of obtaining results previously denied. Certainly, the administration of
justice would be ill-served by my granting such relief as the resources of an
already-overburdened Court system would be further diverted into the protracted
litigation perpetuated by the parties to this action. I further believe that the parties
themselves, including the [Debtor] would be ill served by my recusal as, at
present I seem to be the only Judge fully familiar with the long history and the
several related cases. I know of no reason that I cannot continue to preside fairly
and impartially over the matters before me.

08-1170 Abstention Motion, Exh. A (February 11, 2009, Decision and Order (Demarest, J.)).

4

accounting by Mr. Taub of "all marital properties including the Grand Avenue properties." 09-1027 Abstention Motion, Exh. F (Chana Taub Aff. at 4). The Debtor commenced a lawsuit in Israel based upon alleged equitable distribution claims to apartments occupied by Mr. Taub's daughters. S. Taub App. ¶ 18. And the Debtor commenced several proceedings in Housing Court and this Court against tenants residing in several of the alleged marital properties seeking eviction and related relief. S. Taub App. ¶¶ 15-17; Adv. Pro. No. 09-1277, Docket No. 1 (Complaint).

## Discussion

Mr. Taub seeks relief from the automatic stay in order to "permit the pending [Second] Divorce Action in [the Supreme Court, Kings County] to proceed up to judgment on all issues, including equitable distribution with enforcement to take place in this Court . . . ." S. Taub App. at 1. Mr. Taub argues that he is entitled to relief from the automatic stay under the factors set forth in *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990). S. Taub App. ¶¶ 21-31.

The Debtor opposes the relief sought in the Lift Stay Motion. The Debtor argues in substance that the *Sonnax* factors show that stay relief is not warranted. *See* Debtor's Opp. at 17-22. Ms. Newhouse joins in the Debtor's opposition and argues that "a weighing of the Sonnax factors clearly demonstrates that the [Lift Stay] Motion should be denied." Newhouse Joinder ¶¶ 4-5.

### The Automatic Stay

The filing of a bankruptcy petition under the Bankruptcy Code triggers a stay of any act to commence or continue "a judicial, administrative, or other action" to recover a prepetition

claim against the debtor, and stays any act to "exercise control over property of the estate." 11 U.S.C. §§ 362(a)(1), (a)(3). The automatic stay is "effective immediately upon the filing" of a bankruptcy petition without further action. *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994).

The automatic stay is a fundamental debtor protection designed to promote equal treatment among creditors and to provide the debtor with a "breathing spell" from the "financial pressures that drove [the debtor] into bankruptcy." *Eastern Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) (internal quotations omitted). Notwithstanding this statutory protection, the court may modify the automatic stay for cause, including lack of adequate protection. 11 U.S.C. § 362(d)(1).

The automatic stay does not prevent Mr. Taub and the Debtor from seeking a dissolution of their marriage. 11 U.S.C. § 362(b)(2)(A)(iv). And the Stay Relief Motion does not call for this Court to express a view on the issues that the Debtor and Mr. Taub are litigating in state court. Rather, the issue presented here is whether Mr. Taub has established cause for relief from the stay to allow Mr. Taub and the Debtor to proceed to conclusion and the entry of judgment in the Second Divorce Action, with enforcement to take place in this Court.

*Equitable Distribution*

New York's Domestic Relations Law sets forth the framework for determining interests in property in a divorce action. Section 236 of the Domestic Relations Law provides:

> Except where the parties have provided in an agreement for the disposition of their property . . . the court, in an action wherein all or part of the relief granted is divorce, or the dissolution, annulment or declaration of the nullity of a marriage . . . shall determine the respective rights of the parties in their separate or marital property, and shall provide for the disposition thereof in the final judgment.

N.Y. Dom. Rel. Law § 236(B)(5)(a).

As one bankruptcy court explained:

[I]n July 1980, New York enacted an equitable distribution law, DRL § 236. Equitable distribution creates a classification of property known as "marital property." Marital property refers to "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, *regardless of the form in which title is held*." DRL § 236, Part B, subd. 1(c) (emphasis added).

Under equitable distribution, the matrimonial court can direct the distribution of marital property between the spouses in the final divorce judgment. DRL § 236, Part B, subd. 5(a).

*In re Cole*, 202 B.R. 356, 359-60 (Bankr. S.D.N.Y. 1996).

<u>Relief from the Automatic Stay</u>

Section 362(d)(1) of the Bankruptcy Code permits relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). "The burden is on the moving party to make an initial showing of 'cause' for relief from the stay. Only if the movant makes such a showing does any burden shift to the debtor; absent a showing of cause, the court should simply deny relief from the stay." *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2d Cir. 1999) (citations omitted).

The Second Circuit has observed that "[n]either the statute nor the legislative history defines the term 'for cause.'" *Sonnax*, 907 F.2d at 1285. The court identified several factors to be considered in deciding whether cause exists to lift the automatic stay to allow litigation to proceed in another forum, as follows:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for

defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.  "Not all of these factors will be relevant in every case."  *Mazzeo,* 167

F.3d at 143.[2]  And the court need not give equal weight to each factor.  *See Burger Boys, Inc. v.*

*South St. Seaport Ltd. P'ship (In re Burger Boys, Inc.)*, 183 B.R. 682, 688 (S.D.N.Y. 1994).

Rather, as several courts have noted, "[w]hen applying these factors and considering whether to

modify the automatic stay, the Court should take into account the particular circumstances of the

case, and ascertain what is just to the claimants, the debtor and the estate."  *In re Keene Corp*.,

171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994).  *See In re Cole*, 202 B.R. at 361; *In re Touloumis*,

170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994).

The Court will consider several relevant factors in turn.

*Sonnax* Factor 1:  Whether Relief Would Result in a Partial or Complete Resolution of the Issues

The first *Sonnax* factor is whether stay relief would result in a partial or complete

resolution of the issues.  Mr. Taub argues that lifting the stay would result in a "significant

resolution of some of the issues."  S. Taub App. ¶ 24.  He argues that "[t]he determination on the

entitlements to the equitable distribution will permit the parties to go forward to determine how

to either liquidate or arrange for the payment of debts against the properties."  S. Taub App. ¶ 24.

The Debtor argues in substance that because issues involving the marital property are the

_____

[2]  *Sonnax* factors 3, 5, and 9 are not relevant to this matter as the Second Divorce Action does not involve the Debtor as a fiduciary, does not involve insurance, and will not result in a judicial lien avoidable by the Debtor.

subject of several pending state court actions, stay relief would not result in resolution of the issues. Ms. Newhouse argues that only this Court is in a position completely to resolve the issues, because creditors' claims to the marital property and Ms. Kaufman's claims in Adversary Proceeding No. 08-1424 are before this Court and not subject to the abstention motions filed by Mr. Taub. Newhouse Joinder ¶ 4.

At this juncture, the Debtor's equitable distribution interest in the assets held by Mr. Taub and others, and Mr. Taub's equitable distribution interest in the assets held by the Debtor, have not been determined. On March 7, 2008, the Supreme Court, Kings County, held an inquest and observed that the issues of "equitable distribution and support" . . . are now being held in abeyance as a consequence of [the automatic stay] resulting from [the Debtor's bankruptcy proceeding]." 08-1170 Abstention Motion, Exh. A (February 11, 2009, Decision and Order (Demarest, J.)).

And while it has jurisdiction over property of this Chapter 11 estate, this Court is declining to exercise jurisdiction over an adversary proceeding addressing the ownership of certain properties in which the Debtor claims an equitable interest, where the same question is also pending before the state court. *See Chana Taub v. Simon Taub, 10 Grand Avenue LLC, Rachel Taub, and Perl Fein*, Adversary Proceeding No. 09-1027, Docket Nos. 20 (August 14, 2009, Memorandum Decision on Motion To Abstain), 21 (August 14, 2009, Order on Motion To Abstain).

Relief from the automatic stay would allow the Supreme Court, Kings County to determine issues including "the respective rights of the parties in their separate or marital property. . . ." N.Y. DOM. REL. LAW § 236(B)(5)(a). This would resolve significant open issues

9

in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a Chapter 11 plan.

Accordingly, the Court finds that this factor weighs in favor of relief from the automatic stay.

_Sonnax_ Factor 2:  Lack of Any Connection or Interference with the Bankruptcy Case

The second _Sonnax_ factor is whether there is the lack of any connection with the bankruptcy case, and whether stay relief would interfere with this bankruptcy case.  Mr. Taub argues that the bankruptcy estate can only benefit by a determination of the Debtor's interests in the marital properties and, in any event, this factor should not "overcome the other factors which weigh[] in favor of granting a lift stay."  S. Taub App. ¶ 28.

The Debtor argues that stay relief will interfere with this bankruptcy case because "a distribution to the Debtor's creditors is conditioned upon the value of the Marital Properties being preserved" and the Supreme Court, Kings County will not ensure that the value of the marital properties is preserved for the benefit of the estate.  Debtor's Opp. at 20-21.

Ms. Newhouse argues that this factor weighs against stay relief because the Debtor's ability to propose and confirm a Chapter 11 plan depends on the resolution of the Debtor's and Mr. Taub's claims to the marital property, as well as the resolution of claims of third parties including Ms. Kaufman and several lenders.  Newhouse Joinder ¶ 4(b).  She argues that granting stay relief "would grind this chapter 11 case to a halt."  _Id_.  Ms. Newhouse also argues:

> [T]o the extent the state court proceeding might interfere with the Debtor's ability to realize value from her properties pending resolution of the competing claims to the marital properties, such as the collection of rent, the Debtor would have great difficulty funding the administration of her chapter 11 case while the equitable distribution proceeding languished in state court.

*Id.*

At the outset, it is plain that the Debtor is a central participant in both this bankruptcy case and the Second Divorce Action. And the resolution of the equitable distribution issues between the Debtor and Mr. Taub is similarly a central issue in both actions. To this extent, the two actions are "connected."

But that is not to say that the granting of stay relief to allow the Second Divorce Action to proceed to conclusion and the entry of judgment, with enforcement to take place in this Court, would "interfere" with this bankruptcy case. Indeed, the opposite appears more likely. The progress of this bankruptcy case requires the determination of what is the Debtor's and Mr. Taub's marital property and the equitable distribution of that property.

Stay relief also does not pose a threat to preserving the value of property of the Debtor's Chapter 11 estate. This Court retains jurisdiction over property of the estate and is not abstaining from deciding the issues in the adversary proceeding commenced by the Debtor that concerns the management of certain properties held in the Debtor's name. *See Chana Taub v. Simon Taub*, Adversary Proceeding No. 08-1170, Docket Nos. 39 (August 14, 2009, Memorandum Decision on Motion To Abstain), 40 (August 14, 2009, Order on Motion To Abstain).

Accordingly, the Court finds that this factor weighs in favor of relief from the automatic stay.

*Sonnax* Factor 4: Whether a Specialized Tribunal with the Necessary Expertise Has Been Established To Hear the Cause of Action

Another relevant *Sonnax* factor is whether a specialized tribunal with the necessary expertise has been established to hear the cause of action. Mr. Taub argues that "federal courts

generally defer the resolution of State Law divorce and equitable distribution in favor of the State courts." S. Taub App. ¶ 25.

The Debtor argues that "the judge presiding over the divorce proceeding . . . is not a family court judge, but instead is a commercial part judge who was assigned the case because of a series of [recusals] by prior judges" and that "the Divorce Judge has no special expertise in the handling of divorce proceedings." Debtor's Opp. at 19. Ms. Newhouse similarly argues that "neither Justice Demarest nor Justice Knippel are family court judges" and that "neither has any special expertise in addressing the parties' disputes regarding the properties." Newhouse Joinder ¶ 4(c).

The Supreme Court, Kings County has significant expertise in domestic relations matters, and is well qualified to determine the respective property entitlements and obligations of the parties to a divorce action. As noted by one bankruptcy court:

> In New York, matrimonial courts have long been empowered, in connection with divorce actions, to determine the issues of title to property and to make directions pertaining to the possession of property.
>
> . . .
>
> Federal courts, including bankruptcy courts, ordinarily defer to the state courts in matrimonial matters to promote judicial economy and out of respect for the state courts' expertise in domestic relations issues. . . . New York's state courts are more familiar with the concepts of marital property and how to apply the statutory and discretionary factors that govern equitable distribution. Bankruptcy courts, on the other hand, rarely interpret or apply the equitable distribution statute.

*In re Cole*, 202 B.R. at 359-61 (citations omitted).

The state court's expertise in dealing with matrimonial actions has been recognized by other courts. As another bankruptcy court observed, "bankruptcy courts will generally defer to state courts in the interest of judicial economy and restraint and out of respect for the state

courts' expertise in domestic relations issues." *In re Newman*, 196 B.R. 700, 703 (Bankr. S.D.N.Y. 1996). *See Matter of Levine*, 84 B.R. 22, 24 (Bankr. S.D.N.Y. 1988) ("this court should not interfere with the state court's determination as to the New York law of equitable distribution as applied to the claims of the debtor and his wife."). *Accord Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992) ("the bankruptcy court correctly placed equitable distribution disputes in the category of cases in which state courts have a special expertise and for which federal courts owe significant deference."); *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir. 1985) ("It is appropriate for bankruptcy courts to avoid incursions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.'") (quoting *In re Graham*, 14 B.R. 246, 248 (Bankr. W.D. Ky. 1981)).

Accordingly, the Court finds that this factor weighs in favor of relief from the automatic stay.

*Sonnax* Factor 6:  Whether the Action Primarily Involves Third Parties

The sixth *Sonnax* factor is whether the action primarily involves third parties.  Mr. Taub argues that this factor is not relevant because third parties are not involved in the Second Divorce Action.  S. Taub App. ¶ 23.  The Debtor does not address this factor.  Ms. Newhouse argues with respect to this factor that "[t]he Debtor is the central party to the action.  Litigation in another forum would interfere with her ability to move forward with her chapter 11 case to the detriment of the Debtor and the creditors of her estate."  Newhouse Joinder ¶ 4(d).

As noted above, the Debtor is a central participant in both this bankruptcy case and the Second Divorce Action.  And Mr. Taub, the other party to the Second Divorce Action, has had

an active role in this bankruptcy case and is a party to certain related adversary proceedings. Relief from the automatic stay is sought to address the issues of marital property and equitable distribution. These issues primarily involve the Debtor and Mr. Taub.

Accordingly, the Court finds that this factor does not weigh in favor of or against relief from the automatic stay.

*Sonnax* Factor 7:  Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors

The seventh *Sonnax* factor is whether litigation in another forum – here, the Supreme Court, Kings County – would prejudice the interests of other creditors. Mr. Taub argues that the interests of creditors will not be prejudiced, and indeed, that "[a]ll the creditors can only be benefitted by a determination of the Debtor's interest in the properties in question . . . and whether the Debtor will receive sufficient funds to pay these creditors or whether the properties are to be sold to raise the funds to pay such creditors." S. Taub App. ¶ 29.

The Debtor argues that creditors would be prejudiced by the continuation of litigation in Supreme Court, Kings County because she "fears that the Divorce Judge will not seek to preserve the value of the Marital Properties." Debtor's Opp. at 20-21. Ms. Newhouse argues that this factor favors denial of stay relief because she "and other parties in interest would not be able to participate in the state court litigation and would be harmed by the delay in the administration of the Debtor's chapter 11 case." Newhouse Joinder ¶ 4(e).

As the bankruptcy court noted in *In re Cole*, "[s]ending parties back to state court to litigate the issue of equitable distribution may interfere with the administration of the case, and prejudice creditors of the estate." *In re Cole*, 202 B.R. at 361. This is because:

Granting stay relief creates the possibility that the matrimonial court will

distribute property of the estate to the non-debtor spouse, in satisfaction of her
prepetition claim, without regard to the bankruptcy priority system or the rights of
the other creditors. In addition, unlike bankruptcy, the debtor's creditors will
probably not be able to participate in, or at least monitor the claim liquidation
process.

*In re Cole*, 202 B.R. at 362.

But that is not the end of the analysis. As the bankruptcy court observed in *In re Cole*,

"[w]hile the matrimonial court is uniquely qualified to determine the nature and the extent of that

[equitable distribution] entitlement, this court is exclusively authorized to adjudicate the impact

of that entitlement upon any property subject to the claims of other creditors of the estate." *In re*

*Cole*, 202 B.R. at 362. *See In re Palmer*, 78 B.R. 402, 406 (Bankr. E.D.N.Y. 1987).

That is, the risk of prejudice to creditors can be addressed by limiting the scope of stay

relief. As the *Cole* court found, "[t]he bankruptcy court can limit stay relief to the liquidation of

the amount of the Movant's unsecured claim, and require her to return to the bankruptcy court to

enforce her judgment through the claims allowance process." *In re Cole*, 202 B.R. at 362 (citing

cases). And here, stay relief may be granted to permit the matrimonial court to decide the issues

before it, including the issue of equitable distribution, but only up to the entry of judgment. In

that way, this Court would retain jurisdiction to enforce a judgment, and the priorities

established by the Bankruptcy Code and the rights of other creditors can be protected.

Accordingly, the Court finds that this factor weighs in favor of relief from the automatic

stay.

*Sonnax* Factor 8:  Whether the Judgment Claim Arising from the Action Is Subject to Equitable
Subordination

The eighth *Sonnax* factor is whether the judgment claim arising from the other

proceeding is subject to equitable subordination. Mr. Taub argues that this factor is not relevant

because equitable subordination is not an issue here.  S. Taub App. ¶ 23.  The Debtor does not

address this factor.  Ms. Newhouse argues:

> To the extent that a judgment rendered in the equitable distribution proceeding
> resulted in a judgment in favor of Mr. Taub, such judgment would likely be
> subject to an equitable subordination proceeding given the allegations of
> numerous and wrongful acts perpetrated by Mr. Taub against the Debtor and her
> creditors.

Newhouse Joinder ¶ 4(f).

Whether or not equitable subordination proves to be an issue in the Debtor's bankruptcy

case, the parties do not dispute that the question of equitable subordination would be decided by

this Court.  Docket No. 301 (Transcript of July 22, 2009, hearing at 38:11-22). To the extent that

stay relief is granted to permit the matrimonial court to decide the issues before it, and to enter

judgment, with enforcement to take place in the bankruptcy court, this Court would retain the

ability to decide the issue of equitable subordination.

Accordingly, the Court finds that this factor does not weigh in favor of or against relief

from the automatic stay.

### *Sonnax* Factor 10:  The Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation

The tenth *Sonnax* factor is the interests of judicial economy and the expeditious and

economical resolution of litigation.  Mr. Taub argues that it is in the interests of both judicial

economy and expeditious and economical resolution of litigation to allow the Second Divorce

Action to proceed.  S. Taub App. ¶ 26.  He argues that the "State Supreme Court has already

indicated its familiarity and knowledge of matrimonial law as well as the issues involved in this

Divorce Action . . . ."  *Id.*

The Debtor argues that the "state court actions . . . have been fractured hopelessly" and

that as a result, "the state court proceedings are at a virtual standstill. . . ." Debtor's Opp. at 2, 8.

She states that the judge presiding over the Second Divorce Action "has refused to exercise any

jurisdiction over the Property Interest Issue or any issues relating to the seven real properties

owned by the Debtor and/or Simon Taub" and that those issues will be decided by other judges.

Debtor's Opp. at 19-20. Ms. Newhouse argues that "the equitable distribution proceeding has

languished in state court and there is no evidence that such proceeding would not languish in

state court for many years to come." Newhouse Joinder ¶ 4(h).

The long history of the contentious and acrimonious litigation between the Debtor, Mr.

Taub, and others confirms that the interests of judicial economy and the expeditious and

economical resolution of litigation merit careful attention here. The matrimonial litigation

between the Debtor and Mr. Taub was commenced in 2005. The Supreme Court, Kings County

is familiar with the history of the proceedings, and but for the commencement of this bankruptcy

case, that court would have proceeded with the determination of the issues present there,

including equitable distribution and support. As Justice Demarest stated:

> Following preliminary litigation of several related issues, the parties agreed that a
> divorce should be granted to [the Debtor] on grounds of constructive
> abandonment. An inquest was held before me on March 7, 2008 and [the
> Debtor's] unopposed petition was granted. Judgment was deferred pending
> resolution of equitable distribution and support. Those issues are now being held
> in abeyance as a consequence of a stay resulting from [the Debtor's] recently filed
> bankruptcy proceeding.

08-1170 Abstention Motion, Exh. A (February 11, 2009, Decision and Order (Demarest, J.)).

Equitable distribution is governed by New York law, and is an area of law where the

state courts have special expertise. It is also an area where bankruptcy courts routinely, and

appropriately, defer to state court for decision, with enforcement left to the bankruptcy process.

*See, e.g., In re Newman*, 196 B.R. at 703; *Matter of Levine*, 84 B.R. at 24; *In re Robbins*, 964 F.2d at 345; *In re MacDonald*, 755 F.2d at 717.

Accordingly, the Court finds that this factor weighs in favor of relief from the automatic stay.

*Sonnax* Factor 11:  Whether the Parties Are Ready for Trial in the Other Proceeding

The eleventh *Sonnax* factor is whether the parties are ready to proceed to trial in the other proceeding.  Mr. Taub argues that he is prepared to "proceed in the [Second Divorce Action] . . . to go to trial and bring this matter to conclusion as soon as possible."  S. Taub Affirm. ¶ 2; S. Taub App. ¶ 27.

The Debtor argues that the Second Divorce Action is not ready for trial because it has been "fractured" by the deferral of all property interest claims to other judges.  Debtor's Opp. at 2, 7.  Ms. Newhouse argues that the "equitable distribution proceeding has languished in state court and there is no evidence that such proceeding would not languish in state court for many years to come."  Newhouse Joinder ¶ 4(h).

In the February 11, 2009, Decision and Order entered in the Second Divorce Action, Justice Demarest observed that the equitable distribution and support issues were "held in abeyance" as a result of the Debtor's bankruptcy filing and the imposition of the automatic stay. 08-1170 Abstention Motion, Exh. A (February 11, 2009, Decision and Order (Demarest, J.)). That is, if limited relief from the automatic stay is granted, the Supreme Court, Kings County is able to proceed with the determination of the equitable distribution and other issues up to the entry of judgment.

Accordingly, the Court finds that this factor weighs in favor of relief from the automatic

stay.

<u>*Sonnax* Factor 12:  Impact of the Stay on the Parties and the Balance of Harms</u>

The final *Sonnax* factor is the impact of the automatic stay on the parties and the balance of the harms.  Mr. Taub argues that stay relief to allow the Supreme Court, Kings County to determine the issue of equitable distribution will benefit the Debtor and allow her to formulate a Chapter 11 plan, and enable her to ascertain whether she will receive sufficient funds to pay her creditors through a plan.  S. Taub App. ¶ 29.

The Debtor and Ms. Newhouse argue that denial of stay relief will help preserve the value of the marital properties and allow the parties in interest to be heard.  Debtor's Opp. at 20-21; Newhouse Joinder ¶ 4(i).  The Debtor also argues that Justice Demarest has demonstrated bias against her, and that she will be harmed if she is required to litigate the issue of equitable distribution in the Supreme Court, Kings County.  Docket No. 300 (July 23, 2009, letter from Chana Taub).

The Supreme Court, Kings County is an appropriate forum to determine the issues present in the Second Divorce Action, including the question of equitable distribution of the marital property between the Debtor and Mr. Taub, for several reasons.  The Debtor's matrimonial action has been pending there since 2005, and that court has experience with both the area of law and these proceedings.  The resolution of that issue will assist the Debtor in formulating her Chapter 11 plan.  And stay relief may be limited to allowing the Supreme Court, Kings County to determine the issues, up to the entry of judgment, but not enforcement, so that the administration of this bankruptcy case and the interests of the parties present here are not harmed.

While the Debtor and Ms. Newhouse argue that the Supreme Court, Kings County may not preserve the value of the marital property, the record does not support this assertion. And property of the Debtor's Chapter 11 bankruptcy estate will remain within the jurisdiction of this Court.

The Debtor also states that she will be harmed if the issue of equitable distribution is decided in the Second Divorce Action, because she believes that Justice Demarest is biased against her. But the appropriate forum in which to address this issue is the state court, where the Debtor has sought the recusal of Justice Demarest and has appealed from the denial of that request. S. Taub App. ¶ 9; 08-1170 Abstention Motion, Exh. A (February 11, 2009, Decision and Order (Demarest, J.)); S. Taub App. ¶ 19. *See* Docket No. 300 (July 23, 2009, letter from Chana Taub). The automatic stay does not address this concern.

Accordingly, the Court finds that this factor weighs in favor of relief from the automatic stay.

*       *       *

For these reasons, and based on the entire record, the Court finds that Mr. Taub has shown that there is cause for relief from the automatic stay, to permit the parties to proceed in the Second Divorce Action to conclusion and the entry of judgment, with enforcement to take place in this Court. The Court also finds that the Debtor has not met her burden to come forward with a contrary showing.

## Conclusion

For the reasons stated herein, and based on the entire record, the Lift Stay Motion is granted to the extent that Mr. Taub may proceed in the Second Divorce Action to conclusion and

the entry of judgment, with enforcement to take place in this Court.  This Court shall retain

jurisdiction to enforce any judgments within the context of this bankruptcy case.

An order in conformity with this Memorandum Decision shall be entered simultaneously

herewith.

Dated: Brooklyn, New York
    ___*August 14,*___ 2009


    ___*s/Elizabeth S. Stong*_____
    ELIZABETH S. STONG
    UNITED STATES BANKRUPTCY JUDGE